FILED

2012 Dec-17  PM 02:55
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| WILLIE TAYLOR, III, | ) | |
| | ) | |
| Plaintiff, | ) | CASE NO. 2:09-cv-02285-MEF |
| | ) | (WO – Publish) |
| v. | ) | |
| | ) | |
| MIKE HALE, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

Plaintiff Willie Taylor, III, has filed a *pro se* complaint pursuant to *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971), and 42 U.S.C. § 1983, alleging that rights, privileges, or immunities afforded him under the Constitution or laws of the United States were abridged when he was booked into the Jefferson County Jail in Birmingham, Alabama.[1]  Plaintiff has since been released from custody.  Plaintiff names as defendants Jefferson County Deputy Sheriffs Wes Seale, Keith Smith, Barbara Mead, and Deputy United States Marshals Tim Burks and Gail Weiss.[2]  Plaintiff seeks monetary and declaratory

---

[1]    Plaintiff names state and federal officials as defendants.  A § 1983 suit challenges the constitutionality of the actions of state officials; a *Bivens* suit challenges the constitutionality of the actions of federal officials.  *See Wilson v. Blankenship*, 163 F.3d 1284, 1288 (11th Cir. 1998).

[2]    Plaintiff set forth additional claims and named additional defendants in his amended complaint.  (Doc. #22.)  In a report and recommendation entered on December 9, 2010, United States Magistrate Judge Paul W. Greene recommended the dismissal of all of Plaintiff's claims pursuant to 28 U.S.C. § 1915A(b)(1) and/or (2) with the exception of his constitutional and state law

relief.  Plaintiff's complaint was originally assigned to United States District Judge L. Scott Coogler in the Northern District of Alabama and, in accordance with 28 U.S.C. § 636(b)(1), was referred to United States Magistrate Judge Paul W. Greene for a preliminary report and recommendation.  *See McCarthy v. Bronson*, 500 U.S. 136 (1991).  Before Judge Greene entered his report and recommendation, this case was reassigned to this Court for further proceedings.

On February 7, 2011, Judge Greene entered an Order for a Special Report, directing that a copy of the amended complaint be forwarded to Defendants and requesting that they file a Special Report addressing Plaintiff's factual allegations contained in his amended complaint.  (Doc. #29.)  Defendants were advised that the Special Report should be accompanied by sworn statements and, if appropriate, would be considered as a motion for summary judgment filed pursuant to Federal Rule of Civil Procedure 56.  *Id.*  By the same order, Plaintiff was advised that after he received a copy of the Special Report submitted by Defendants, he should file counter-affidavits if he wished to rebut the matters presented by Defendants in the Special Report.  *Id.*

On June 6, 2011, Defendants Burks and Weiss filed a Special Report.  (Doc. #35.) On July 8, 2011, Defendants Seale, Smith, and Mead filed a Special Report.  (Doc. #39.) Defendants' Special Reports were accompanied by affidavits and other documents.  (Doc.

---

claims against Defendants Smith, Seale, Mead, Burks, and Weiss in their individual capacities. (Doc. #26.)  By order entered January 31, 2011, the district judge dismissed the remainder of the defendants and claims.  (Doc. #28.)

##35 & 39.)  Plaintiff was notified that Defendants' Special Reports had been construed as motions for summary judgment and that he would have twenty (20) days to respond, if he chose, by filing affidavits and other material.  (Doc. #49.)  Plaintiff was also advised of the consequences of any default or failure to comply with Federal Rule of Civil Procedure 56. *See Griffith v. Wainwright*, 772 F.2d 822, 825 (11th Cir. 1985).  Plaintiff filed a response on December 14, 2011.  (Doc. #50.)

## II. JURISDICTION AND VENUE

This Court has federal question jurisdiction over Plaintiff's claims under 28 U.S.C. § 1331. The parties do not claim that the Court lacks personal jurisdiction over them, nor do they dispute that venue is proper under 28 U.S.C. § 1391(b), and the Court finds adequate allegations supporting both.

## III. FACTUAL BACKGROUND

On April 27, 2009, at approximately 4:45 p.m., Deputy United States Marshals ("DUSM") Tim Burks and Gail Weiss transported Plaintiff to the Jefferson County Jail for holding until April 28, 2009.  (Burks Decl. at ¶ 2, Doc. #35-1.)  One of the deputy marshals uncuffed Plaintiff and handed him over to the Jefferson County Deputy Sheriffs at the booking desk of the jail.  *Id*. at ¶ 3.  DUSM Burks proceeded to fill out the relevant paperwork and DUSM Weiss stood by.  *Id*.

Jefferson County Deputy Sheriff Barbara Mead was the booking officer.  (Amend. Compl. at ¶ 6, Doc. #22.)  Mead asked Plaintiff for his name, social security number, and date of birth. *Id*. at ¶ 16.  Plaintiff responded to Defendant Mead while standing between the

two deputy marshals.  *Id*. at ¶ 17.  Deputy Sheriff Wes Seale then stated, "Shake your head again and I'll shake your head from off your got [sic] damn body."[3]  *Id*. at ¶ 18.  Plaintiff looked at both deputy marshals and then to Seale who then "choke slammed" Plaintiff to the floor and attempted to drag Plaintiff by his shirt to the holding cell.  *Id*. at ¶ 20.  Plaintiff looked to the deputy marshals and asked, "'You all going to let him do this to me[?]'"  *Id*. at ¶ 21.  DUSM Burks continued to fill out a form and DUSM Weiss did not intervene or say anything to prevent Seale from using excessive force against Plaintiff.  *Id*. at ¶ 22.

Plaintiff asked Seale why he was assaulting him.  *Id.* at ¶ 23.  Seale forced Plaintiff to the floor on his stomach with a "combination of repetitious blows to the temple, jaw, neck, and ribs as Defendant Smith and other Deputy Sheriffs assisted and kick[ed] and punched plaintiff in his ribs and back area."  *Id*. at ¶ 24.  Plaintiff was handcuffed again and dragged to the holding cell where the beating continued.[4]  *Id.*

---

[3]    Deputy Mead states in her affidavit:

> After he was brought to the booking area, Mr. Taylor was patted down and his handcuffs were removed.  I attempted to interview him, but he would not answer my questions and would not cooperate with my attempts to gather information during the booking process.

> Deputy Seale told Mr. Taylor that he had to cooperate, but he still refused to do so.  Deputy Seale then escorted Mr. Taylor away from me to wait until he was willing to cooperate with my efforts to interview him, which is part of the booking process.

(Mead Aff. at ¶¶ 4–5, Doc. #39, Ex. 4.)

[4]   Officer Mead further attests:

> As Deputy Seale was escorting Mr. Taylor away from me, Mr. Taylor

Plaintiff could not defend himself because he was handcuffed from behind, so he "begged and pleaded" with the officers. *Id*. at ¶ 25. Deputy Keith Smith kicked Plaintiff in his buttocks and back as Deputy Seale dragged him and an unknown black male deputy held his legs in the air, attempting to get Plaintiff in the cell. *Id*. at ¶ 26. The unknown black male deputy "had both of plaintiff['s] legs in the air, while spliting [sic] them and [commenced] to stumping [sic] plaintiff in the stomach and testicle area." *Id*. at ¶ 28. Deputy Seale repeatedly hit and kicked Plaintiff in the head, ribs, and neck area.[5] *Id.* at ¶ 29. Defendant

---

>          attempted to punch Deputy Seale. Deputy Seale wrestled Mr. Taylor
>          to the ground and tried to subdue him, but Mr. Taylor kept trying to
>          punch Deputy Seale while he was on the ground and started kicking.
>          Other deputies and one of the federal marshals came to assist Deputy
>          Seale, and Mr. Taylor continued to punch and kick until he was able
>          to be subdued.

(Mead Aff. at ¶ 6.)

[5]     Deputy Seale states the following in his affidavit:

>          I told Mr. Taylor that he was going to have to cooperate [during the
>          booking process] and he still refused. I then took him away from
>          Deputy Mead with the intent to take him to a bench where he could
>          sit for a period of time until he was willing to cooperate. As I was
>          leading him away, Mr. Taylor pulled away from me and took a swing
>          at me. I tried to hit him in the brachial to subdue him, but I could not
>          make contact with that part of his body and instead had to wrestle
>          him to the ground in an effort to subdue him and get the handcuffs
>          back on him. Deputy Smith and one of the federal marshals came to
>          assist me. We were able to get Mr. Taylor subdued and handcuffed,
>          but we had to drag him to the holding cell because he refused to get
>          up and walk after being told to do so.

>          I did not have any other interaction with Mr. Taylor after he was put
>          into the holding cell.

>          At no point did I, or anyone else, use a tazer, pepper spray, or any

Smith also continued to kick Plaintiff before choking him until he lost consciousness.  *Id.* at

¶ 30.  Plaintiff claims that the two deputy marshals remained outside the holding cell

"listening and watching" but did not intervene.[6]  *Id.* at ¶ 31.  Plaintiff claims he did not resist

or threaten the officers at any time.[7]  (Pl.'s Resp. at 3, Doc. #50.)

---

> other weapon (lethal or non-lethal) on Mr. Taylor.  I did punch Mr.
> Taylor in an effort to hit his brachial, but that was only done in an
> effort to subdue him after he initiated a physical altercation.

(Seale Aff. at ¶¶ 8–10, Doc. #39, Ex. 3.)

[6]     Plaintiff alleges in his response to Defendants' motions for summary judgment,
"Defendants Burks and Weiss did not intervene to prevent these kicks, and blows, and I believe that
these defendants also kicked and struck plaintiff."  (Pl.'s Resp. at 2, Doc. #50.)  Since filing this
action, Plaintiff has not alleged that Burks and Weiss participated in assaulting him.  Instead, he has
maintained that Burks and Weiss failed to intervene while he was being assaulted by deputy sheriffs.
(Amend. Compl. at ¶ 31.)  Plaintiff will not be allowed at this late stage to allege new facts without
good cause shown and express leave of the Court.  (*See* Doc. #29, at 5.)

[7]     DUSM Burks submitted a declaration, in which he states:

> After completing the pat down, the Deputy Sheriff ordered Taylor to
> a nearby bench.  As the Deputy Sheriff was moving Taylor towards
> the bench, Taylor began to struggle and resist sitting down on the
> bench.  As this physical struggle started, I was still in the midst of
> filling out the paperwork I was tasked with completing. . . .
>
> . . . During this struggle, Taylor's legs kick[ed] out at about my waist
> level as the Deputy Sheriffs were attempting to restrain him.  I was
> able to take both of my hands and grab one of Taylor's legs against
> my side and was able to use my other foot by placing it on the jean
> portion of Taylor's other leg to the floor so that he could not continue
> to flail his other leg.  The Deputy Sheriffs then were able to secure
> Taylor's hands, handcuff him, and then move him into the holding
> cell.
>
> After Taylor was secured in the holding cell and I finished the
> paperwork, DUSM Weiss and I left the Jefferson [C]ounty Jail.

(Burks Decl. at ¶¶ 7–10, Doc. #35-1.)

Plaintiff was stripped of his clothing and regained consciousness when Deputy Smith sprayed mace up Plaintiff's nose and pulled Plaintiff's hair.  (Amend. Compl. at ¶ 32, Doc. #22.)  Smith then spit in Plaintiff's face, slammed Plaintiff's face to the floor, and left the cell.[8]  *Id*.

---

Defendant Weiss attests:

> One of the Deputy Sheriffs began asking Taylor various questions such as his name, social security number, and date of birth for booking purposes.  Taylor responded to the questions and it appeared that the Deputy Sheriff was aggravated with how Taylor was responding to the questions.  This type of exchange continued and the Deputy Sheriff's aggravation appeared to increase and then other Deputy Sheriffs approached Taylor and attempted to physically move him with some force.

> As the Deputy Sheriffs attempted to physically move Taylor, the situation escalated into a physical struggle.  Taylor appeared not to appreciate the manner that the Deputy Sheriffs were physically moving him and he demonstrated resistance.  During this episode, it appeared that the Deputy Sheriffs were trying to control Taylor in light of the physical resistance he was showing and handcuff him.

> Eventually, Taylor was handcuffed and placed under control and then moved into a holding cell.  This incident occurred rapidly and while some force was utilized to control Taylor, never did I believe Taylor was in physical danger nor were the Deputy Sheriffs physically beating Taylor while in my presence.

(Weiss Decl. at ¶¶ 4–6, Doc. #35-2.)

[8]   Deputy Smith attests:

> Deputy Seale told Mr. Taylor that he had to cooperate [during the booking process], and he escorted Mr. Taylor away from Deputy Mead.  Mr. Taylor then turned and took an aggressive stance with Deputy Seale.  Mr. Taylor either tried to punch Deputy Seale or lunged for him, it was hard to tell from my vantage point, but I could clearly see Deputy Seale wrestle Mr. Taylor to the ground in an effort

Plaintiff attempted to "regain function but injuries to plaintiff['s] face, neck, shoulder, lower back, ribs, testicle, and hip made it very difficult." *Id*. at ¶ 33.  After being left in the holding cell for hours without medical attention, Plaintiff asked a deputy sheriff to get a doctor, but the deputy ignored him.  *Id*. at ¶ 34.  Later, Smith and Mead came to Plaintiff's cell.  *Id*. at ¶ 35.  Smith pulled out his flashlight to examine Plaintiff's injuries.  *Id*.  Plaintiff informed Smith and Mead that he thought his ribs were broken.  *Id*. at ¶ 36. The deputies responded that if his ribs were broken he would not be able to breathe.  *Id*. at ¶ 37.  The deputies then left Plaintiff's cell.  *Id*.

Later, Deputy Seale returned to Plaintiff's cell with two deputies and asked Plaintiff whether he needed to be handcuffed again.  *Id*. at ¶ 38.  Plaintiff replied, "'No, I'm cool.'"  *Id*. at ¶ 39.  Plaintiff then informed Seale that he is H.I.V. positive.  *Id*.  Seale responded, "'I didn't get any blood on me.'"  *Id*. at ¶ 40.  Seale again asked Plaintiff whether he needed to

---

to subdue him.  At that point, one of the federal marshals and I came to assist Deputy Seale in his efforts to re-handcuff Mr. Taylor.

We were able to re-handcuff Mr. Taylor, but he would not comply with an order to stand-up.  Since he would not do so, we had to drag him to a holding cell.

I did not have any other interaction with Mr. Taylor after he was put into the holding cell.

At no point did I or anyone else use a tazer, pepper spray, or any other weapon (lethal or non-lethal) on Mr. Taylor.  At no point did I punch, kick, slap, or strike Mr. Taylor.  Any physical force I used on Mr. Taylor was done as a part of my effort to assist Deputy Seale in subduing Mr. Taylor and getting him into a holding cell.

(Smith Aff. at ¶¶ 8–11, Doc. #39, Ex. 2.)

be handcuffed and Plaintiff replied no.  *Id*.  Smith took Plaintiff's prints and mug-shot.  *Id*. at ¶ 43.

Jail medical notes indicate Plaintiff had a small cut to his right thumb, injury to his left eye and temple, and rib pain.  (Doc. #50 at 19–21.)  Plaintiff also complained of painful respirations.  *Id*.  He was prescribed ibuprofen.  *Id*. at 20.

Plaintiff was allowed to use the telephone before Seale escorted him to the eighth or ninth floor where he was made to sleep on the floor with no further medical care.  (Amend. Compl. at ¶ 49, Doc. #22.)  Plaintiff was charged with disorderly conduct.  *Id*. at ¶ 54.

On April 28, 2009, DUSM Weiss and DUSM Josue Almada returned to the Jefferson County Jail to transport Plaintiff to federal court.  (Weiss Decl. at ¶ 8, Doc. #35-2.)  Once at the federal courthouse, Plaintiff complained to Supervisory DUSM Floyd Lee about his alleged injuries. (Lee Decl. at ¶ 4, Doc. #35-3.)  He stated that he had spoken various expletives to the booking officer during the verbal exchange the day before and that he became frustrated when he was repeatedly told to speak up.  *Id*.  Although Lee did not see any physical signs of injury to Plaintiff, out of an abundance of caution, he decided to have Plaintiff transported to the hospital.  *Id*.

DUSM Weiss and DUSM Almada escorted Plaintiff to Cooper Green Hospital where he was examined.  (Weiss Decl. at ¶ 9–10, Doc. #35-2.)  Plaintiff did not sustain any fractures but was diagnosed with a chest contusion and directed to take ibuprofen as needed. (Doc. #50 at 22–23.)  Thereafter, Plaintiff was escorted back to the federal courthouse.  (Doc. #35, Weiss Aff. at ¶ 10.)

## IV.  LEGAL STANDARD

A motion for summary judgment looks to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A court should grant summary judgment when the pleadings and supporting materials show that no genuine issue exists as to any material fact and that the moving party deserves judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying" the relevant documents that "it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To shoulder this burden, the moving party can present evidence to this effect. *Id.* at 322–23. Or it can show that the nonmoving party has failed to present evidence in support of some element of its case on which it ultimately bears the burden of proof. *Id.*

If the moving party meets its burden, the non-movant must then designate, by affidavits, depositions, admissions, or answers to interrogatories, specific facts showing the existence of a genuine issue for trial. *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593–94 (11th Cir. 1995). A genuine issue of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in his or her favor. *Waddell v. Valley Forge Dental Assocs.*, 276 F.3d 1275, 1279 (11th Cir. 2001). Thus, summary judgment requires the nonmoving party to "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. Indeed,

a plaintiff must present evidence demonstrating that he can establish the basic elements of his claim, *Celotex,* 477 U.S. at 322, because "conclusory allegations without specific supporting facts have no probative value" at the summary judgment stage. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985).

In ruling on a motion for summary judgment, a court must believe the non-movant's evidence. *Anderson*, 477 U.S. at 255. It also must draw all justifiable inferences from the evidence in the nonmoving party's favor. *Id.* After the nonmoving party has responded to the motion, the court must grant summary judgment if there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c).

## V.  DISCUSSION

**A.      Defendants Seale and Smith**

*1.      Fourteenth Amendment – Excessive Force*[9]

---

[9]      It appears that Plaintiff was a pre-trial detainee when the allegations made the basis of this suit occurred. The applicable standard is the same for claims involving the mistreatment of pre-trial detainees and convicted prisoners whether brought under the Eighth, Fifth, or Fourteenth Amendments. *See Bozeman v. Orum*, 422 F.3d 1265, 1271 (11th Cir. 2005) (citing *Cottrell v.*

Plaintiff alleges that Deputy Sheriffs Wes Seale and Keith Smith, along with other unidentified deputies, brutally assaulted him on April 27, 2009, while he was being booked into the Jefferson County Jail.  Plaintiff claims no force was necessary because he did not resist or threaten the deputies.

Plaintiff's excessive force claims against Defendants Seale and Smith must be analyzed under the standard set forth by the United States Supreme Court in *Hudson v. McMillian*, 503 U.S. 1 (1992), and *Whitley v. Albers*, 475 U.S. 312 (1986).  *See Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999).  In *Hudson v. McMillian*, the Supreme Court held that in assessing an inmate's excessive force claim, "the core judicial inquiry is that set out in *Whitley*: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  *Hudson*, 503 U.S. at 6–7.[10]  In extending *Whitley* to all cases involving allegations of the use of force by prison officials, the Supreme Court reasoned:

> Many of the concerns underlying our holding in *Whitley* arise whenever guards use force to keep order.  Whether the prison disturbance is a riot or a lesser disruption, corrections officers

---

*Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996)); *see also Daniel v. U.S. Marshal Serv.*, 188 Fed. App'x 954, 961–62 (11th Cir. 2006).  For ease of reference, however, the Court will analyze Plaintiff's constitutional claims under the Eighth Amendment.

[10]   The Supreme Court reaffirmed this holding in *Wilkins v. Gaddy*, 130 S. Ct. 1175 (2010), when it corrected the Fourth Circuit's "strained" interpretation of *Hudson* to "merely . . . lower the injury threshold for excessive force claims from 'significant' to 'non-*de minimis*.'" *Wilkins*, 130 S. Ct. at 1179.  In *Wilkins*, the Court clarified that the purpose of *Hudson* was to "shift the 'core judicial inquiry' from the extent of the injury to the nature of the force—specifically, whether [the force] was nontrivial and 'was applied . . . maliciously and sadistically to cause harm." *Id.* (quoting *Hudson*, 503 U.S. at 7).

> must balance the need to maintain or restore discipline through
> force against the risk of injury to inmates.  Both situations may
> require prison officials to act quickly and decisively.  Likewise,
> both implicate the principle that prison administrators . . . should
> be accorded wide-ranging deference in the adoption and
> execution of policies and practices that in their judgment are
> needed to preserve internal order and discipline and to maintain
> institutional security.

*Hudson*, 503 U.S. at 6 (internal citations and quotation marks omitted).

With these concerns in mind, the Supreme Court set out certain factors that should be considered when evaluating whether the force used was excessive.  These factors include: "the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible official, and any efforts to temper the severity of a forceful response."  *Id.* at 7 (quoting *Whitley*, 475 U.S. at 321 (internal quotation marks omitted); *see also Skrtich v. Thornton*, 280 F.3d 1295, 1300 (11th Cir. 2002) (applying *Hudson*'s four-factor test).

Construing the facts in a light most favorable to Plaintiff, Defendants Seale and Smith intentionally and maliciously attacked Plaintiff.  Furthermore, no force was needed against Plaintiff because he was not resisting and was subsequently handcuffed.  Instead, Defendants Seale and Smith kicked, punched, slapped, and choked Plaintiff.  Defendant Smith also sprayed mace up Plaintiff's nose and spit in his face. Plaintiff contends that he sustained injuries to his face, neck, shoulder, lower back, ribs, testicles, and hip.

Defendants Seale and Smith contend, however, that Plaintiff attempted to punch Defendant Seale and that the only force they used against Plaintiff was an amount necessary

to subdue him and get him into a holding cell.  They allege that Plaintiff initiated the confrontation and threatened their safety.  Defendant Seale admits that he punched Plaintiff in an effort to hit his brachial, but claims that he did so only to subdue Plaintiff after Plaintiff initiated the physical altercation.

It is well established that assessing the credibility of the allegations made by the plaintiff or defendant is beyond the scope of a trial court's ruling on a motion for summary judgment.  *See, e.g.*, *Anderson v. Liberty Lobby, Inc.*, 447 U.S. 242, 255 (1986); *see also Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1986).  The facts presented by both parties show that a genuine dispute exists between Plaintiff's and Defendants Seale and Smith's versions of the facts in connection with the April 27, 2009 incident.  Accordingly, Defendants Seale and Smith's motion for summary judgment as to Plaintiff's Fourteenth Amendment excessive force claims is due to be DENIED.

To the extent Defendants Seale and Smith argue that they are entitled to qualified immunity with regard to Plaintiff's excessive force claims,

> a defense of qualified immunity is not available in cases alleging excessive force in violation of the Eighth Amendment, because the use of force maliciously and sadistically to cause harm is clearly established to be a violation of the Constitution . . . . There is simply no room for a qualified immunity defense when the plaintiff alleges such a violation.  The only question, then, is whether the plaintiff has alleged facts sufficient to survive a motion for summary judgment.  If he has done so, that is the end of the inquiry.

*Skrtich*, 280 F.3d at 1301 (quoting *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986) (internal citations and quotation marks omitted)).  Because Plaintiff has alleged facts sufficient to

-14-

survive a motion for summary judgment concerning his Fourteenth Amendment excessive force claims, Defendants Seale and Smith's motion for summary judgment on the basis of qualified immunity is also due to be DENIED.

### 2.   *Alabama State Law – Assault and Battery*

Plaintiff alleges state law assault and battery claims against Defendants Seale and Smith arising out of the April 27, 2009 incident.[11]   Generally, sheriffs enjoy sovereign immunity from suits for damages in their individual capacities for acts they performed in the course and scope of their employment.  *See Ex parte Davis*, 930 So. 2d 497, 500–01 (Ala. 2005) ("[T]his Court has consistently held that a claim for monetary damages made against a constitutional officer in the officer's individual capacity is barred by State immunity whenever the acts that are the basis of the alleged liability were performed within the course and scope of the officer's employment."); *Boshell v. Walker Cnty.*, 598 So. 2d 843, 844 (Ala. 1992) (recognizing that "a sheriff, as an executive officer of the State of Alabama, is immune, under Article I, § 14, of the Alabama Constitution, from suit based on state law claims arising out of the execution of the duties of his office").  Additionally, the Alabama Supreme Court has held that "deputy sheriffs are immune from suit to the same extent as sheriffs," because the deputy sheriff is the "alter ego of the sheriff." *Ex parte Shelley*, 53 So.

---

[11]   Plaintiff's state law claims against the respective defendants for assault and battery and negligence arise out of the same set of facts that are the basis for his constitutional claims against them for excessive force and failure to protect.  Thus, the Court has considered the factors relevant to the determination of whether it should exercise supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.  The Court finds that it is appropriate and judicially economical for it to consider Plaintiff's state law claims as they arise out of the same facts and are against the same defendants as his constitutional claims.

3d 887, 891 (Ala. 2009) (citations omitted).

Plaintiff does not dispute that Defendants Seale and Smith were acting in the course and scope of their employment as deputy sheriffs when the incident that is the basis of this suit occurred.  Therefore, Plaintiff's assault and battery claims against Seale and Smith are due to be dismissed since a claim for monetary damages against the deputies in their individual capacities is barred by the doctrine of sovereign immunity.[12]  *See Ex parte Davis*, 930 So. 2d at 500–01.

Based on the foregoing, Defendants Seale and Smith's motion for summary judgment as to Plaintiff's assault and battery claims against them in their individual capacities is due to be GRANTED and those claims are due to be DISMISSED based on sovereign immunity grounds.

## B.   Defendants Mead, Burks, and Weiss

Plaintiff alleges that Deputy Sheriff Barbara Mead and Deputy U.S. Marshals Tim

---

[12]     It should be noted that the doctrine of sovereign immunity, which the deputy sheriffs enjoy, is distinct from state-agent immunity.  State-agent immunity may bar an action against a state agent or employee only to the extent the employee did not act willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law as set forth in *Ex parte Cranman*, 792 So. 2d 392, 405 (Ala. 2000).  However, because sheriffs are constitutional officers, a claim for monetary damages against them in their individual capacities is barred by the doctrine of sovereign immunity whenever the acts that form the basis of the suit were performed within the line and scope of their employment as deputy sheriffs regardless of the exceptions set forth in *Cranman*.  *See McMillian v. Johnson*, 101 F.3d 1363, 1365 (11th Cir. 1997) ("[A] claim against an Alabama sheriff in his individual capacity is barred by the doctrine of sovereign immunity," even if such claim is based on malicious or intentional wrongdoing); *Suttles v. Roy*, 75 So. 3d 90, 93–94 (Ala. 2010) (noting that state immunity and state-agent immunity are "two different forms of immunity" and that those who qualify for state immunity "are treated differently under Alabama law").

Burks and Gail Weiss violated his constitutional rights when they witnessed Seale and Smith use excessive force against him but failed to intervene or protect him. Plaintiff's state law negligence claims against these defendants are also premised on their alleged failure to protect him from Seale and Smith's use of excessive force.

### 1.    *Fourteenth and Fifth Amendments – Failure to Protect*[13]

The Eighth Amendment's prohibition on cruel and unusual punishment imposes upon institutional officials the duty to "take reasonable measures to guarantee the safety of the inmates" in their custody. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)). Jail officials and officers in charge of an inmate's custody may be held liable under the Constitution for acting with "deliberate indifference" to an inmate's safety when the official knows that the inmate faces "a substantial risk of serious harm" and possessing such knowledge disregards that risk by failing to take reasonable measures to abate it. *Farmer v. Brennan,* 511 U.S. 825, 828 (1994). A constitutional violation occurs only when a plaintiff establishes the existence of "a substantial risk of serious harm, of which the official is subjectively aware, . . . and [that] the official does not respond[ ] reasonably to the risk' . . . ." *Marsh v. Butler Cnty.*, 268 F.3d 1014, 1028 (11th Cir. 2001) (*en banc*) (quoting *Farmer,* 511 U.S. at 844).

"In order to state a § 1983 cause of action against prison officials based on a

---

[13]    "The Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any person of property without 'due process of law.'" *Dusenbery v. United States*, 534 U.S. 161, 167 (2002).

constitutional deprivation resulting from cruel and unusual punishment, there must be at least some allegation of a conscious or callous indifference to a prisoner's rights, thus raising the tort to constitutional stature."[14] *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir. 1982) (quoting *Wright v. El Paso County Jail*, 642 F.2d 134, 136 (5th Cir. 1981)). It is only when institutional officials' deliberate indifference to a known danger or risk exposes an inmate to objectively, "sufficiently serious," harm that a constitutional violation occurs. *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)); *see Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) ("When officials become aware of a threat to an inmate's health and safety, the [E]ighth [A]mendment's proscription against cruel and unusual punishment imposes a duty to provide reasonable protection.").

A danger or risk is "known" only if the institutional official is both "aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he . . . draw[s] th[at] inference." *Farmer*, 511 U.S. at 837. "[A]n official's failure to alleviate a significant risk that he should have perceived, but did not," is not sufficient to establish liability on the part of the official. *Id*. at 838. Furthermore, "the known risk of injury must be a 'strong likelihood, rather than a mere possibility.'" *Edwards v. Gilbert*, 867 F.2d 1271, 1276 (11th Cir. 1989) (quoting *State Bank of St. Charles v. Camic*, 712 F.2d 1140, 1146 (7th Cir. 1983)).

---

14    The Eleventh Circuit Court of Appeals has held: "Because of the similarity in the causes of action, a *Bivens* case challenges the constitutionality of federal officials' conduct, while § 1983 challenges the constitutionality of state officials' conduct, we generally apply § 1983 law to *Bivens* cases." *Wilson v. Blankenship*, 163 F.3d 1284, 1288 (11th Cir. 1998) (internal quotation marks and citation omitted).

Once it is established that an institutional official knew of a substantial danger or risk to an inmate, it must then be shown that the official was deliberately indifferent to that risk. "[A]n Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Farmer*, 511 U.S. at 842. Deliberate indifference requires "a state of mind more blameworthy than negligence." *Id*. at 835.

According to the factual allegations presented by Plaintiff, Defendants Mead, Burks, and Weiss witnessed Defendants Seale and Smith use excessive force against him but failed to intervene. This type of allegation, if proven, establishes that officers knew of a substantial danger to an inmate but were deliberately indifferent to that inmate's safety. *See Skrtich v. Thornton*, 280 F.3d 1295, 1300–01 (11th Cir. 2002) ("[A]n officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held personally liable for non-feasance.").

However, Defendant Mead states in her affidavit that the physical force used by the officers to subdue Plaintiff was not excessive and was necessary to get him under control and into the holding cell. (Mead Aff. at ¶ 9, Doc. #39, Ex. 4.) Defendant Burks alleges that he was not aware of any physical beating inflicted upon Plaintiff and that the deputy sheriffs only took physical action to control Taylor when it became clear Taylor would not cooperate. (Burks Decl. at ¶ 11, Doc. #35.) Lastly, Defendant Weiss contends that she never believed Plaintiff was in physical danger and that the deputy sheriffs were not beating Plaintiff in her

presence.  (Weiss Decl. at ¶ 6, Doc. #35.)

As stated previously, assessing the credibility of the allegations made by a plaintiff or defendant is beyond the scope of a trial court's ruling on a motion for summary judgment. *See, e.g.*, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *see also Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).  The facts presented by both parties show a genuine dispute over whether Mead, Burks, and Weiss failed to protect Plaintiff from Seale and Smith's alleged use of excessive force on April 27, 2009.  Therefore, Defendant Mead's and Defendants Burke and Weiss's motions for summary judgment as to Plaintiff's Fifth and Fourteenth Amendment failure to protect claims are due to be DENIED.

In asserting a claim of qualified immunity, a defendant must first show that "the allegedly unconstitutional conduct occurred while he was acting within the scope of his discretionary authority." *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1281 (11th Cir. 1998).  If the official meets this initial burden, the plaintiff must then show that the official's conduct violated clearly established law." *Id.*  In determining whether the plaintiff has met this burden, the court may first determine whether the plaintiff has alleged the deprivation of a constitutional right, and then may determine whether that right was clearly established at the time of the alleged violation.  *Saucier v. Katz*, 533 U.S. 194, 197 (2001).[15]

Applying the foregoing law to the facts of the present case, the Court concludes that

---

[15] In *Pearson v. Callahan*, 555 U.S. 223, 236 (2009), the Supreme Court retreated from *Saucier*'s holding that courts must apply the first step before applying the second step in making a qualified immunity determination.

Defendants Mead, Burks, and Weiss are not entitled to qualified immunity. First, Plaintiff's version of the facts—that Defendants were present when Seale and Smith allegedly assaulted him but failed to intervene—establishes a constitutional violation. *See Davidson v. Cannon*, 474 U.S. 344, 348–49 (1986); *see also Skrtich v. Thornton*, 280 F.3d 1295, 1300–01 (11th Cir. 2002). Second, the duty of an officer to protect inmates in their care from assault by fellow officers had been clearly established for years prior to these defendants' alleged failure to intervene or protect Plaintiff on this occasion. *See Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1560 (11th Cir. 1993), *as amended*, 14 F.3d 583 (11th Cir. 1994) ("A police officer has a duty to intervene when another officer uses excessive force."); *Byrd v. Clark*, 783 F.2d 1002, 1007 (11th Cir. 1986) ("[I]f a police officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence, the officer is directly liable under Section 1983."). As such, Defendant Mead's and Defendants Burks and Weiss's motions for summary judgment on the basis of qualified immunity are also due to be DENIED.

### 2.    *State Law – Negligence*

#### a.    Defendant Mead

As stated above, deputy sheriffs enjoy sovereign immunity from suits for damages in their individual capacities for acts they performed in the course and scope of their employment. *See Ex parte Davis*, 930 So. 2d 497, 500–01 (Ala. 2005); *see also Ex parte Shelley*, 53 So. 3d 887, 891 (Ala. 2009) (citation omitted).

Plaintiff does not dispute that Defendant Mead was acting in the line and scope of her

employment as deputy sheriff when she failed to protect Plaintiff from Smith and Seale's alleged use of excessive force.  Therefore, Mead's motion for summary judgment is due to be GRANTED and Plaintiff's negligence claim against Mead is due to be DISMISSED on sovereign immunity grounds.

### b.      Defendants Burks and Weiss

The Federal Employees Liability Reform and Tort Compensation Act of 1988, also known as the Westfall Act, affords federal employees absolute immunity from common-law tort claims arising out of acts they undertake in the scope of their office or employment.  *See* 28 U.S.C. § 2679(b)(1); *see also Osborn v. Haley*, 549 U.S. 225, 229 (2007).  Therefore, when a federal employee is sued for a wrongful or negligent act, the Westfall Act "empowers the Attorney General to certify that the employee 'was acting within the scope of his office or employment at the time of the incident out of which the claim arose.'"[16] *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 419–20 (1995) (quoting 28 U.S.C. § 2679(d)(1)).  After the Attorney General's certification, the named defendant employee is dismissed from the action and the United States is substituted as the defendant in place of the employee.  *See Osborn v. Haley*, 549 U.S. at 229–30.  The case is then governed by the Federal Tort Claims Act.  *Id.* at 230.

However, in the event the Attorney General refuses to certify the scope of

---

[16]      The Attorney General delegated this authority by regulation to the United States Attorneys and the Assistant Attorney General for the Civil Division, Department of Justice, who regularly make scope of employment decisions.  *See* 28 C.F.R. § 15.3.

employment under the Westfall Act, the employee may, at any time before trial, petition the court to find and certify that the employee was acting within the scope of his office or employment.  28 U.S.C. § 2679(d)(3).  Once the court has certified that the employee was acting within the scope of his or her employment, the action shall be deemed to be one against the United States and the United States shall be substituted as the party defendant. *Id*.

In the present case, the Attorney General, by and through the local U.S. Attorney's Office, has not certified that Burks or Weiss were acting within the scope of their employment when the incident giving rise to this action occurred.  Neither have Burks nor Weiss petitioned the Court to certify that they were acting within the scope of their employment.[17]  Therefore, Plaintiff's negligence claims proceed against Burks and Weiss as an ordinary tort action.  *See Sullivan v. Freeman*, 944 F.2d 334, 337 (7th Cir. 1991) ("The suit proceeds as an ordinary tort action against an individual, as it would if, for example, the defendant, although unquestionably a federal employee within the meaning of the Westfall Act, had been acting outside the scope of his employment when he committed the tort.").

---

[17]    Although it does not appear that the Eleventh Circuit Court of Appeals has addressed the issue, other circuits have held that when the Attorney General fails to certify an employee as acting within the scope of employment, the district court may not *sua sponte* substitute the United States for the employee as defendant.  *See Sullivan v. Freeman*, 944 F.2d 334, 337 (7th Cir. 1991) ("Given the elaborate statutory procedures for notification, certification, and petition, we do not think that in their absence either the district court or this court is obliged to determine on its own initiative whether the suit is against a federal employee acting within the scope of his employment."); *see also U-Haul Intern., Inc. v. Estate of Albright*, 626 F.3d 498, 501 (9th Cir. 2010) ("The Westfall Act doesn't empower the district court sua sponte to abrogate the federal government's sovereign immunity and subject it to the risk of liability.").

Under Alabama law, a plaintiff alleging a negligence claim must prove that (1) the defendant owed the plaintiff a duty; (2) the defendant breached that duty; and (3) the plaintiff incurred an injury as a consequence of the breach.  *See Armstrong Bus. Servs., Inc. v. AmSouth Bank*, 817 So. 2d 665, 679 (Ala. 2001).

Defendants Burks and Weiss had a duty to protect Plaintiff from the deputy sheriffs' use of excessive force.  *See Ala. Dep't of Corrections v. Thompson*, 855 So. 2d 1016, 1025 (Ala. 2003) (noting that a duty to exercise reasonable care may arise where one stands in a special relationship with either the victim or the person causing the injury); *see generally Patton v. Thompson*, 958 So. 2d 303, 310 (Ala. 2006) (acknowledging that prison officials have a duty to exercise ordinary and reasonable care for the protection of persons in their custody).  Viewing the facts in a light most favorable to Plaintiff, Burks and Weiss breached that duty to Plaintiff by failing to intervene while Seale and Smith used excessive force against him.  As a consequence of Burks and Weiss's alleged breach, Plaintiff sustained physical injuries.

However, Burks and Weiss contend that the deputy sheriffs did not use excessive force against Plaintiff and, therefore, there was no need for them to intervene to protect Plaintiff.  Because there are genuine issues of material fact as to whether the deputy sheriffs used excessive force against Plaintiff and as to whether Defendants Burks and Weiss negligently failed to protect Plaintiff when he was allegedly assaulted by Seale and Smith on April 27, 2009, Burks and Weiss's motion for summary judgment is due to be DENIED.

## VI. CONCLUSION

Accordingly, for the reasons stated above, it is hereby ORDERED that:

1.      Defendants' motion for summary judgment as to Plaintiff's Fourteenth Amendment excessive force claims against Defendants Seale and Smith is DENIED.

2.      Defendants' motion for summary judgment as to Plaintiff's Fourteenth Amendment excessive force claims against Defendants Seale and Smith on the basis of qualified immunity is DENIED.

3.      Defendants' motion for summary judgment as to Plaintiff's Alabama state law assault and battery claims against Defendants Seale and Smith on the basis of sovereign immunity is GRANTED and the claims are DISMISSED WITH PREJUDICE.

4.      Defendants' motion for summary judgment as to Plaintiff's Fourteenth Amendment failure to protect claim against Defendants Mead is DENIED.

5.      Defendants' motion for summary judgment as to Plaintiff's Fourteenth Amendment failure to protect claim against Defendant Mead on the basis of qualified immunity is DENIED.

6.      Defendants' motion for summary judgment as to Plaintiff's Alabama state law negligence claim against Defendant Mead on the basis of sovereign immunity is GRANTED and the claim is DISMISSED WITH PREJUDICE.

7.      Defendants' motion for summary judgment as to Plaintiff's Fourteenth Amendment failure to protect claims against Defendants Burks and Weiss is DENIED.

8.      Defendants' motion for summary judgment as to Plaintiff's Fourteenth Amendment failure to protect claims against Defendants Burks and Weiss on the basis of

qualified immunity is DENIED.

9.      Defendants' motion for summary judgment as to Plaintiff's Alabama state law negligence claims against Defendants Burks and Weiss is DENIED.

The Clerk is hereby DIRECTED to serve a copy of this Memorandum Opinion and Order upon Plaintiff and upon counsel for Defendants.

DONE this the 17th day of December, 2012.

_____/s/ Mark E. Fuller_____
UNITED STATES DISTRICT JUDGE